UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| BECKY A. SELBY, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 2:20-cv-00016 |
| HOLLY T. SCHROEDER, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case arises from a contract dispute over a blind horse named Niko. Before the Court is Defendant Holly T. Schroeder's Motion to Dismiss (Doc. No. 30). Schroeder originally filed the Motion in the Middle District of Pennsylvania. After the case was transferred to this Court to cure jurisdictional defects (Doc. Nos. 43, 50), this Court renewed the Motion and ordered supplemental briefing. (Doc. No. 83). Those briefs have now been filed, including: (1) Schroeder's Revised Memorandum in Support of Her Motion to Dismiss (Doc. No. 74); (2) Plaintiff Becky A. Selby's ("Selby") Response in Opposition (Doc. No. 87); and (3) Schroeder's Reply (Doc. No. 88). For the reasons that follow, the Motion will be granted in part and denied in part.

**I.     BACKGROUND AND FACTUAL ALLEGATIONS[1]**

Niko, the blind horse, is now ten years old. (Doc. No. 26 ¶ 11). Schroeder, a professional horse breeder, owned Niko but found the prospect of caring for her and her disability to be prohibitively expensive. (Id. ¶¶ 9(a), 20). A veterinarian that worked with Schroeder lamented that the only reasonable option was to "put [Niko] down" because of her blindness. (Id.). However,

---

[1] As this is a motion to dismiss, the following facts are drawn from the Amended Complaint (Doc. No. 26 ("Am. Compl.")) and are presumed as true. See Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

Schroeder wanted Niko to be well-cared for, and so she instead offered the horse for sale on social media. (Id. ¶¶ 15, 20).

Schroeder and Selby entered into an oral contract for the transfer of Niko in October 2017. (Id. ¶ 11). Because Selby could not pay the $1,000 asking price for Niko, the parties agreed that Selby would obtain ownership subject to certain conditions. (Id. ¶ 18). As consideration, Selby agreed to care for Niko for the rest of her life and provide the horse's first-born healthy foal to Schroeder. (Id. ¶ 17). Schroeder would then transfer Niko's official registration under Selby's name. (Id. ¶¶ 19, 21). The parties negotiated remotely, as Schroeder lived in Tennessee and Selby resided in Pennsylvania. (Id. ¶¶ 8–9, 15). On a pre-arranged date, Selby drove from Pennsylvania to Kentucky, where Schroeder's veterinarian housed Niko. (Id. at ¶ 24). Selby picked up Niko and promptly returned to Pennsylvania to care for her pursuant to the parties' agreement. (Id.).

As Niko neared the end of gestation for her first-born foal, Schroeder allegedly reneged and requested conditions that differed from those in the parties' original agreement. (Id. ¶ 25). Among the differing conditions, Schroeder now wanted: 1) all of Niko's offspring, not just the first-born foal; and 2) Selby to continue to care for Niko without any transfer of ownership rights or official registration. (Id. ¶¶ 24-25). Thus, despite the parties' original agreement, Schroeder has not yet authorized the Tennessee Walking Horse Breeders and Exhibitors Association ("TWHBEA") to transfer Niko's registration to Selby. (Id. ¶¶ 13, 38, 43(a)). Instead, Schroeder filed a police report with the Warren County, Kentucky Sheriff's Office claiming that Selby stole Niko. (Id. ¶¶ 39–40). On January 9, 2019, a sherriff's deputy called Selby to inform her of the police report; however, the case was not pursued further. (Id. ¶ 39).

Based on the foregoing, Selby brings four counts against Schroeder: (1) breach of contract, (2) fraud, (3) malicious prosecution, and (4) defamation.[2] (Id. ¶ 44). Schroeder now moves to dismiss each claim. (Doc. No. 30). Schroeder also moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The Court will address each argument in turn.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must look to the Amended Complaint, accept all of its factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Plaintiff need only provide "a short and plain statement of the claim" that gives "the defendant fair notice of" the claims brought against her. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must provide enough factual allegations "to raise a right to relief above the speculative level," id., but the Court does not weigh whether the plaintiff will ultimately prevail. Id. at 563 n.8 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The Amended Complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678–79.

## III. SCOPE OF THE RECORD PROPERLY BEFORE THE COURT ON A MOTION TO DISMISS

As a preliminary matter, the Court must first resolve a dispute over the scope of the record at this stage of litigation. Each party attaches to her briefs exhibits that the other opposes as being

---

[2] The Court has reordered Selby's claims for ease of analysis.

outside the proper scope of a motion to dismiss. "As a general rule, a court cannot consider matters outside the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6)." Clark v. Walt Disney Co., 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009). However, there are exceptions to this rule: "[d]ocuments attached to the motion to dismiss briefing may be considered part of the pleadings if they were incorporated into the complaint by reference and are central to the plaintiff's claim." Blanch v. Trans Union, LLC, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

Schroeder appends two exhibits to her motion that are neither referred to in the Amended Complaint, nor central to Plaintiff's claims. Those exhibits are: (1) a typed version of what she represents as reflecting a proposed and unsigned written contract following the parties' verbal agreement (Doc. No. 74-1); and (2) an affidavit showing that her understanding of the terms of the "arrangement" between her and Selby differed from the originally agreed-upon terms. (Doc. No. 74-2). Neither exhibit is appropriately considered on a motion to dismiss. First, Schroeder's written "contract" was never binding on the parties, as it was neither signed nor agreed to, let alone even seen by Selby. Nor is it referenced in the pleadings or central to Selby's claims. Blanch, 333 F. Supp. 3d at 791–92. Second, Schroeder's affidavit is an improper attempt to squeeze a dispute of material fact into a motion to dismiss. Whether the parties had a meeting of the minds is a question for the factfinder or belongs in a summary judgment motion, not a motion to dismiss. See Flint v. Mercy Health Regional Medical Center, LLC, No. 1:19-CV-610, 2019 WL 6270916, at *3 n. 3 (N.D. Ohio Nov. 25, 2019) (citing Financial Resources Network, Inc. v. Brown & Brown, Inc., 754 F. Supp. 2d 128, 155 (D. Mass. 2010) ("A motion to dismiss addresses the plausibility of the claims in the complaint and assumes facts therein as true whereas a motion for summary judgment addresses whether genuine issues of material fact exist to support the claims. A different factual

4

record and different standard of review govern summary judgment motions.")). And given that this case is still in the early stages of discovery, the Court will decline Selby's invitation to convert Schroeder's motion into a Motion for Summary Judgment under Fed. R. Civ. P. 12(d). (See Doc. No. 87 at 9).

Schroeder also argues that the Court should not consider a police report prepared by the Warren County, Kentucky Sheriff's Office, which is attached to Selby's response to the motion to dismiss (Doc. Nos. 87-1; 88 at 1). But unlike the exhibits discussed above, the police report is explicitly referenced in the Amended Complaint and is central to an allegation that underlies the defamation and malicious prosecution claims. (Doc. No. 26 ¶¶ 39–41, 44(b), 44(d)). Therefore, the Court concludes it is permissible to consider the police report as an exhibit on this Motion to Dismiss without converting it to a Motion for Summary Judgment. See Blanch, 333 F. Supp. 3d at 791–92. The Court notes, however, that it need not consider what is written in the police report because the mere fact it was filed and referenced in the Complaint is enough to appropriately analyze Selby's defamation and malicious prosecution claims. The Court will now undertake a choice of law analysis and examine each of Selby's claims.

### IV. ANALYSIS

#### A. Applicable Principles to the Choice of Law

Because the Court has jurisdiction over this case based solely on diversity of citizenship between the parties, it must first decide what state's laws to apply to each claim. Typically, "[a] federal court exercising its diversity jurisdiction must apply the choice-of-law rules of the state in which it is located." Yang Ming Marine Transport Corp. v. Intermodal Cartage Co., Inc., 685 F. Supp. 2d 771, 779 (W.D. Tenn. 2010). There is a wrinkle here, however, because the case originated in the Middle District of Pennsylvania, which then transferred the action to this Court

under 28 U.S.C. § 1631 for "want of jurisdiction." (Doc. No. 50). Because the transfer cured a jurisdictional defect, "the state law of the transferee district court applies," which here, of course, is Tennessee. Newberry v. Silverman, 789 F.3d 636, 640 (6th Cir. 2015); see also 28 U.S.C. § 1631 ("the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred"). Thus, Tennessee choice of law rules apply.

This case presents four distinct claims. Choice of law rules are not uniform across all claims brought in a given case; rather, the rules depend on each individual claim. See Restatement (Second) of Conflict of Laws § 173 cmt. a (Am. L. Inst. 1971) (noting a "growing realization that all issues in tort need not be governed by the same law"). "[T]he Court must first determine which state's law applies to each claim." Columbia Cas. Co. v. Century Sur. Co., 203 F. Supp. 3d 863, 868 (M.D. Tenn. 2016). The Court will thus examine each claim in turn, first determining what choice of law a Tennessee court would apply and, second, analyzing that claim under the applicable jurisdiction's law.[3]

### B. Breach of Contract

#### 1. Choice of Law

To determine which state's law applies to contractual claims, Tennessee applies the traditional "lex loci contractus" rule that a "contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." Williams v. Smith, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d

---

[3] While Selby has provided a thorough analysis and argument on the choice of law for each claim in her brief (see Doc. No. 87), Schroeder does not mention the issue and simply applies Tennessee law, without explanation, to each claim she seeks to dismiss (see Doc. No. 74). She has waived any objection to the Court's application of the choice of law. See Hayward v. Cleveland Clinic Found., 759 F.3d 601, 615 (6th Cir. 2014) (quoting Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 552 (6th Cir. 2008) (an "argument not raised before the district court is waived on appeal").

465, 467 (Tenn. 1973)). "The place of contracting is the place where the contract is consummated," or agreed to. Chase Manhattan Bank, N.A. v. CVE, Inc., 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002) (citing Bowman v. Price, 143 Tenn. 366, 226 S.W. 210 (Tenn. 1920)); see also Anderson v. Amazon.com, Inc., 478 F. Supp. 3d 683, 693 (M.D. Tenn. 2020) ("jurisdiction[s] that have considered the issue have held that a contract was formed in the jurisdiction where a buyer . . . indicate[d] acceptance of the contract").

However, this general rule is subject to an exception that "in certain situations, the law of the place of performance will be applied instead." Solomon v. FloWarr Mgmt., Inc., 777 S.W.2d 701, 705 n.5 (Tenn. Ct. App. 1989); see also Cooper v. MRM Inv. Co., 367 F.3d 493, 499 (6th Cir. 2004) (applying Tennessee conflicts of law). To apply the place of performance for choice of law over the contract, "[t]he pertinent consideration is whether a contract was 'entered into in good faith with reference to the law of some other state,' that is, whether it was made 'with a view' to another state." Nordahl v. Studer Revox Am., Inc., 78 F.3d 585 (6th Cir. 1996) (table) (quoting Ohio Cas. Ins. Co., 493 S.W.2d at 466–67); see also Dryair 2000, Inc. v. Blue Winged Olive, L.L.C., No. 1:07-CV-22, 2009 WL 311132, at *5 (E.D. Tenn. Feb. 6, 2009) ("where questions relating to performance of the contract are raised, the law of the state of performance" may be applied under Solomon).

Here, applying Tennessee's choice of law rules, the Court finds that Pennsylvania law controls regardless of whether the analysis is based on where the contract was consummated or performed. The entire contract dealt with a blind horse who was to reside in Pennsylvania. The horse was to produce offspring, and be cared for, in Pennsylvania. Moreover, Selby accepted the contract in Pennsylvania, and Schroeder was to transfer Niko's registration to that state. Although the first foal would return to Tennessee under the original contract's terms, it would be created in

7
Case 2:20-cv-00016   Document 90   Filed 03/01/21   Page 7 of 17 PageID #: 552

Pennsylvania. As alleged in the Amended Complaint and accepted as true for purposes of ruling on this Motion to Dismiss, Schroeder entered into the contract because her "only concern was that the mare be well taken care of, as [she] was unable to care for the mare" herself. (Doc. No. 26 ¶ 20). Indeed, the parties agreed that Plaintiff would cover the horse's relocation expenses to Pennsylvania in order to begin caring for her there. (Id. ¶ 23). Accordingly, the Court will apply Pennsylvania law to the parties' contractual dispute.

      2.      Analysis

Under Pennsylvania law, "three elements are necessary to plead a cause of action for breach of contract: (1) the existence of [an oral, written, or implied] contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016). Schroeder only contests the first element and argues that the parties did not agree to all essential terms to create a contract, namely how Niko's breeding rights would be handled. (Doc. No. 74 at 5). But this argument is based entirely on extraneous parts of the record that are not properly before the Court at the Motion to Dismiss stage – specifically her contention, not evidenced in the pleadings, that she hoped the parties would reduce their agreement to a written contract with materially different terms. (Id.; see also Doc. Nos. 74-1; 74-2). The Court has already resolved this issue above and concluded it may consider only the pleadings at this time.

Here, the Court concludes that Selby sufficiently pled the existence of a contract, including its essential terms. A contract exists when: "(1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and[] (3) there is mutuality of consideration." Ecore Int'l, Inc. v. Downey, 343 F. Supp. 3d 459, 487 (E.D. Pa. 2018) (quoting Redick v. Kraft, Inc., 745 F. Supp. 296, 300

(E.D. Pa. 1990)). The Amended Complaint provides sufficient facts to infer mutual assent and make it more than "speculative" that the parties agreed to the oral contract based on the parties' outward behavior. See Twombly, 550 U.S. at 555. The parties' negotiated contractual terms allow the Court to infer that Schroeder and Selby understood these terms because they agreed to a time and place where Selby would pick up Niko and begin performance by caring for her. (Doc. No. 26 ¶¶ 17, 24). From those allegations, there is a fair and plausible inference of the parties' agreement. Thus, the Court finds that the Amended Complaint plausibly alleges that the parties intended to be bound by the terms of their agreement.

Further, the contract's terms, as pled, were sufficiently definite to be enforced, and there was mutuality of consideration. "Defendant would inseminate and sell the mare to Plaintiff in exchange for: (i) Plaintiff caring for the mare for her life, and (ii) Plaintiff's providing the Defendant the first healthy foal." (Doc. No. 26 ¶ 17). There was a date and time when Selby would retrieve Niko from Schroeder, and thereafter she would care for Niko at her own expense. (Id. ¶ 22–23).[4] These are definite terms for which there was consideration, as Selby agreed to care for the mare and provide Schroeder the first foal in exchange for Schroeder transferring Niko's official registration to Selby. (Id. ¶ 18); see Ecore Int'l, 343 F. Supp. 3d at 491 (quoting Mucci v. Home Depot, No. 00-4946, 2001 WL 1609851, at *3 (E.D. Pa. 2001) (internal quotations omitted) ("Consideration is an act, forbearance, or return promise bargained for and given in exchange for the original promise.")).

"While not every term of a contract must be stated in complete detail, every element must be specifically pleaded," and Selby has sufficiently pled the mutual agreement, key terms, and

---

[4] Schroeder even concedes that she "agreed to" these "'basic terms' of the parties oral contract[.]" (Doc. No. 74 at 5).

9

consideration required to allege the formation of a contract. Udodi v. Stern, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Because the Amended Complaint plausibly alleges the existence of a contract (including its essential terms) under Pennsylvania law, and Schroeder does not dispute that there was a breach or resulting damages, the Court will deny Schroeder's motion to dismiss Selby's breach of contract claim.[5]

C. Fraud

1. Choice of Law

Schroeder also moves to dismiss Selby's fraud claim, which alleges that Schroeder fraudulently entered into the contract because she had no intention of transferring Niko's registration to Selby. (Doc. No. 26 ¶ 44(c)). Selby contends that Pennsylvania law applies to this claim (Doc. Nos. 36 at 14; 87 at 20), while Schroeder cites to Tennessee law (Doc. No. 74 at 6). Because these respective jurisdictions conflict on the elements of fraud, the Court must again look to Tennessee's conflict of laws doctrine.

With respect to conflicts of laws involving tort claims, Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. See Insituform Techs., Inc. v. Per Aarsleff A/S, 534 F. Supp. 2d 808, 811 (W.D. Tenn. 2008) (citing Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992)). Under the "most significant relationship" approach, "the law of the state where the injury occurred will be applied unless some other state has a more

---

[5] Selby alternatively argues that she has sufficiently pled a claim for breach of contract under any of the three substantive law jurisdictions at issue. (Doc. No. 87 at 18). The Court agrees. See Ingram v. Cendant Mobility Financial Corp., 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (reciting the elements of a breach of contract claim under Tennessee law); see also EQT Production Company v. Big Sandy, L.P., 590 S.W.3d 275, 293 (Ky. App. 2019) (reciting the same elements under Kentucky law).

significant relationship to the litigation." Hataway, 830 S.W.2d at 59 (citing Restatement (Second) of Conflict of Laws §§ 6, 145, 146, and 175). In other words, "the rights and liabilities of the parties to an action in tort are determined by the local law of the state that has the most significant relationship to the incident and the parties involved." Chase, 206 F. Supp. 2d at 905. Tennessee courts determine the most significant relationship by examining four contacts: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." Montgomery v. Wyeth, 580 F.3d 455, 459–60 (6th Cir. 2009) (citing Hataway, 830 S.W.2d at 59); see also Restatement (Second) of Conflict of Laws § 145(2) (same). "These [four] contacts are to be evaluated according to their relative importance with respect to the particular issue." See Restatement (Second) of Conflict of Laws § 145.

As an initial matter, the third and fourth contact factors are at best neutral because the parties live, work, and interacted in different jurisdictions. And the first factor weighs in favor of applying Tennessee law because Niko's registration is with the Tennessee Walking Horse Breeders and Exhibitors Association, who must, at Schroeder's direction, execute the transfer, which means the conduct causing the injury occurs in Tennessee. But on balance, the Court finds that the second factor is the most important to Selby's fraud claim, particularly because Schroeder's refusal to transfer ownership is harming Selby in Pennsylvania where she keeps the horse today. Particularly when construed in Selby's favor on a motion to dismiss standard, the active and ongoing harm in Pennsylvania outweighs the Tennessee interest. Because Selby is deprived of her complete ownership rights in Pennsylvania, where she has continued to care for Niko each day over the past several years, the Court finds that Pennsylvania has the most

11

significant relationship to the alleged fraud and that Tennessee's interest would not be subverted by the application of Pennsylvania law here.

Accordingly, the Court finds that a Tennessee court, applying the most significant relationship approach, would apply Pennsylvania law to Selby's fraud claim.

2. Analysis

The elements of a fraud claim in Pennsylvania are: "(1) a representation[;] (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by the reliance." Am. Diabetes Ass'n v. Friskney Family Tr., LLC, 177 F. Supp. 3d 855, 880–81 (E.D. Pa. 2016) (citing Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 290 (Pa. Super. Ct. 2010)); see also Local Union 30, United Union of Roofers, Waterproofers & Allied Workers v. D.A. Nolt, Inc., 625 F. Supp. 2d 223, 228 (E.D. Pa. 2008) (citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994) (same)). Schroeder argues only that the first element fails because Selby did not plead that the fraudulent representation was "of a 'present or past' fact." (Doc. No. 74 at 6). However, Pennsylvania law does not require a temporal limitation on the false fact for the first element; it need only be a "representation." Am. Diabetes Ass'n, 177 F. Supp. 3d at 880–81. Selby has pled such a representation by alleging that Schroeder "offered to transfer registration at a later time." (Doc. No. 26 ¶ 44(c)).[6]

---

[6] The Court notes the pleadings conform to the requirements of Fed. R. Civ. P. 9(b) as: (1) the statement was regarding transfer of Niko's registration, (2) it was made by Schroeder, (3) in the course of their negotiations of the contract, and (4) it was fraudulent because she did not intend to transfer registration. (Doc. No. 26 ¶¶ 44(c)); see Dougherty v. Esperion Therapeutics, Inc., 905 F.3d 971, 978 (6th Cir. 2018).

Accordingly, the Court concludes that Selby has sufficiently pled a claim for fraud under Pennsylvania law.[7]

### D. Malicious Prosecution

#### 1. Choice of Law

Selby's malicious prosecution claim is based on Schroeder filing a police report with the Warren County Sheriff's Office in Bowling Green, Kentucky, wherein Schroeder asserted that Selby stole Niko. (Doc. No. 26 ¶¶ 40–41, 44(d); see also Doc. No. 87 at 21–22). Selby argues that Pennsylvania or Kentucky law should apply to this claim (Doc. No. 87 at 22), while Schroeder contends either Tennessee or Kentucky law should apply. (Doc. Nos. 74 at 7; 88 at 2).

Applying Tennessee's "most significant relationship" test, the Court finds that Kentucky law applies to Selby's malicious prosecution claim. See Montgomery, 580 F.3d at 459–60. Although Selby resides in Pennsylvania, that contact factor is outweighed by the harm she sustained in Kentucky where the police report was filed. Indeed, the Warren County Sheriff's Office does not have jurisdiction beyond the borders of Kentucky and therefore could not harm Selby in Pennsylvania.

Thus, the Court finds that a Tennessee court applying Tennessee conflicts of law analysis would apply Kentucky law to Selby's malicious prosecution claim.

#### 2. Analysis

---

[7] As with the breach of contract claim, Selby alternatively argues that she has sufficiently pled a fraud claim under Tennessee law – the state with the other significant relationship. (Doc. No. 87 at 20). The Court agrees here as well. See Tullahoma Indus., LLC v. Navajo Air, LLC, 2018 WL 3752305, at *18-19 (Tenn. Ct. App. Aug. 7, 2018) (noting that fraud "must embody a promise of future action without the present intention to carry out the promise") (citation omitted). The factual allegations presented establish that Schroeder has admitted her intent was not to transfer Niko's registration. See Doc. Nos. 14 at 3; 87 at 20).

A Kentucky malicious prosecution claim can be brought against a "private person who . . . procures the institution of criminal proceedings against another who is not guilty of the offense charged." Martin v. O'Daniel, 507 S.W.3d 1, 11 (Ky. 2016) (quoting Restatement (Second) of Torts § 653). Liability is "predicate[d] [] upon the defendant's role in initiating or procuring the prior litigation." Id. The Restatement, which was incorporated by the Kentucky Supreme Court in Martin, specifies that:

> Criminal proceedings are instituted when:
>
> (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or
>
> (b) without the issuance of process an indictment is returned or an information filed against him; or
>
> (c) he is lawfully arrested on a criminal charge.

Restatement (Second) of Torts § 654(2).

Here, although Selby asserts that Schroeder filed a police report with the Sheriff's Office, her malicious prosecution claim fails because she does not plead that any criminal proceedings were ever instituted against her, nor does she show that a complaint or indictment issued. (Doc. No. 26 ¶¶ 40–41). Neither the police report—from which no follow up proceeding materialized—nor the phone call between the sheriff's deputy and Selby, suffice to allege that a "criminal proceeding" ever developed. See Restatement (Second) of Torts § 654(2). No malicious prosecution claim can be maintained without an actual prosecution or judicial proceeding being initiated against Selby. See Martin, 507 S.W.3d at 11.

Accordingly, the Court will grant Schroeder's motion to dismiss Selby's malicious prosecution claim.

E. Defamation

### 1. Choice of Law

Schroeder also moves to dismiss Selby's defamation claim, which is predicated on Schroeder's "swearing out a false allegation to criminal authorities" in her police report. (Doc. No. 26 ¶ 44(b)). Because this claim involves the same police report as Selby's malicious prosecution claim, the Court finds that Kentucky law applies to this claim as well. (See supra Section IV.D.1).

### 2. Analysis

Under Kentucky law, "[t]he elements of defamation are: (1) defamatory language; (2) about the plaintiff; (3) which is published to a third party; and (4) which causes injury to reputation. Foster v. Jennie Stuart Med. Ctr., Inc., 435 S.W.3d 629, 636 (Ky. Ct. App. 2013) (quoting Columbia Sussex Corp., Inc. v. Hay, 627 S.W.2d 270, 273 (Ky. App. 1981)). "When the communication concerns untrue allegations of criminal behavior . . . the communication is libelous per se or slanderous per se, and proof of context indicating malice is not required." Harstad v. Whiteman, 338 S.W.3d 804, 810 (Ky. Ct. App. 2011).

Schroeder argues that a "qualified privilege" protects her report to law enforcement. (Doc. No. 88 at 2). To support this contention, she relies on Stilger v. Fling, 391 S.W.3d 751 (Ky. 2013), which holds that "a qualified privilege attaches to reports made to law enforcement authorities for investigation, and like any other qualified privilege, the speaker is afforded immunity unless it is shown that the defamatory statement was malicious." 391 S.W.3d at 754 (quoting 50 Am. Jur. 2d Libel and Slander § 275). However, the qualified privilege only "exists when a statement about suspected wrongdoing *is made in good faith* to law enforcement authorities." Id. (quoting 50 Am. Jur. 2d Libel and Slander § 275) (emphasis added). Here, Selby has pled facts suggesting that Schroeder did not make, and could not have made, her comments to police in good faith. As a party to the contract negotiations, Schroeder knew that she offered possession and eventual

ownership of Niko to Selby if she cared for her and provided the first foal. (Doc. No. 26 ¶¶ 17, 41, 44(b)). Indeed, Selby specifically alleges that Schroeder "is plainly aware that [Selby] did not steal the mare, but that [Schroeder] and [Selby] had entered into an agreement regarding the sale of the mare, which [Schroeder] is refusing to now honor." (Id. ¶ 41). Schroeder could not have made a good faith complaint that by performing her part of the agreement, Selby stole Niko.

Accordingly, the Court finds that Selby has sufficiently pled a defamation claim under Kentucky law and will deny Schroeder's motion to dismiss based on qualified privilege.

## V.  JURISDICTIONAL AMOUNT

Almost as an aside at the end of her reply brief, Schroeder argues that this case should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because "Plaintiff has failed to plead any specific monetary losses that would likely exceed the $75,000.00 jurisdictional amount required by 28 U.S.C. [§] 1332." (Doc. No. 88 at 2).[8] When the jurisdictional amount in the pleadings is challenged, the Court "consider[s] the amount alleged in a complaint and [will] not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011) (quoting Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996)). Here, Selby plainly pled the jurisdictional amount by alleging money damages "in the total amount of $100,000." (Doc. No. 26 ¶ 45(c)); see also Mt. Healthy

---

[8] The Court notes that Schroeder raised this argument for the first time in *this* Court in her reply brief (Doc. No. 89) and mentioned it in her revised memorandum in support thereof (Doc. No. 74). "Generally speaking, arguments raised for the first time in reply briefs are waived." Palazzo v. Harvey, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (quoting Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008)). However, the Court will consider this argument because it was a basis initially presented in her Motion to Dismiss (Doc. No. 30) when the case was first filed and briefed in the Middle District of Pennsylvania, before supplemental briefing was ordered after transfer to this Court.

City Bd. of Ed. v. Doyle, 429 U.S. 274, 276 (1977) (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.")). Because the Court cannot determine to a legal certainty at this time whether the amount in controversy is less than $75,000.00, Schroeder's motion to dismiss under Rule 12(b)(1) will be denied without prejudice.

## VI. CONCLUSION

For the foregoing reasons, Schroeder's Motion to Dismiss (Doc. No. 30) will be granted in part and denied in part as to Selby's malicious prosecution claim. The Court will deny Schroeder's Motion to Dismiss in all other respects.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE