UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| BECKY A. SELBY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 2:20-cv-00016 |
| HOLLY T. SCHROEDER, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Pending before the Court is Plaintiff Becky A. Selby's fully briefed Motion to Dismiss Defendant Holly T. Schroeder's Counter-Complaint (Doc. Nos. 106, 107, 115). For the following reasons, the Motion will be denied.

## I. FACTUAL BACKGROUND

A. Selby's Lawsuit[1]

Schroeder, a professional horse breeder, owned Niko, a horse from an esteemed breeding lineage. (Doc. No. 26 ¶¶ 9(a), 20). Because Niko was blind, Schroeder found the prospect of caring for her and her disability to be prohibitively expensive. (Id.). Schroeder's veterinarian lamented that the only reasonable option was to "put [Niko] down" because of her blindness. (Id.). However, Schroeder wanted Niko to be well-cared for, and so she instead offered the horse for sale on social media. (Id. ¶¶ 15, 20).

---

[1] For ease of analysis, the Court recites the allegations giving rise to the lawsuit in Selby's Amended Complaint, before addressing Schroeder's counterclaims. (See Doc. No. 26) ("Am. Compl.").

Schroeder and Selby entered into an oral contract for the transfer of Niko in October 2017. (Id. ¶ 11). Since Selby could not pay the $1,000 asking price for Niko, the parties agreed that Selby would obtain ownership subject to certain conditions. (Id. ¶ 18). As consideration, Selby agreed to care for Niko for the rest of her life and provide the horse's first-born healthy foal to Schroeder. (Id. ¶ 17). Schroeder would then transfer Niko's official registration under Selby's name. (Id. ¶¶ 19, 21). The parties negotiated remotely, as Schroeder lived in Tennessee and Selby resided in Pennsylvania. (Id. ¶¶ 8–9, 15). On a pre-arranged date, Selby drove from Pennsylvania to Kentucky, where Schroeder's veterinarian housed Niko. (Id. at ¶ 24). Selby picked up Niko and promptly returned to Pennsylvania to care for her pursuant to the parties' agreement. (Id.).

As Niko neared the end of gestation for her first-born foal, Schroeder allegedly reneged and requested conditions that differed from those in the parties' original agreement. (Id. ¶ 25). According to Selby, Schroeder now wanted: (1) all of Niko's offspring, not just the first-born foal; and 2) Selby to continue to care for Niko without any transfer of ownership rights or official registration. (Id. ¶¶ 24–25). Thus, despite the parties' original agreement, Schroeder refused to authorize the Tennessee Walking Horse Breeders and Exhibitors Association ("TWHBEA") to transfer Niko's registration to Selby. (Id. ¶¶ 13, 38, 43(a)). Instead, Schroeder filed a police report with the Warren County, Kentucky Sheriff's Office claiming that Selby stole Niko. (Id. ¶¶ 39–40). On January 9, 2019, a sheriff's deputy called Selby to inform her of the police report; however, the case was not pursued further. (Id. ¶ 39).

Based on the foregoing, Selby brought four counts against Schroeder: (1) breach of contract, (2) fraud, (3) malicious prosecution, and (4) defamation. (Id. ¶ 44).[2] On December 9,

---

[2] Schroeder originally brought this action in the Middle District of Pennsylvania. The case was then transferred to this Court to cure jurisdictional defects (Doc. Nos. 43, 50).

2019, Schroeder moved to dismiss each claim. (Doc. No. 30). On March 1, 2021, the Court denied Schroeder's motion for all but the malicious prosecution claim. (Doc. No. 90).

B. Schroeder's Counterclaims[3]

There are subtle but important differences in the way Schroeder characterizes the dispute. Schroeder agrees that she and Selby entered into a verbal agreement for Niko. (See Doc. No. 97 ¶ 47). Pursuant to that agreement, Selby would care for Niko while Schroeder would retain: (1) exclusive breeding rights; and (2) ownership of Niko's first foal. (Id.). Schroeder and Selby would also split proceeds for sales of any remaining foal. (Id.). Schroeder agrees that, to close the deal, the parties verbally arranged to meet at Schroeder's veterinarian's office in Bowling Green, Kentucky. (Id. ¶ 50). But Schroeder alleges she drafted a contract memorializing the verbally agreed-to terms for the parties to sign. (Id.). Schroeder also alleges that Selby and her husband arrived in Bowling Green far earlier than the pre-arranged time and allegedly "persuaded the veterinarian to release Niko" before Schroeder could arrive. (Id.). Selby then returned with Niko to Pennsylvania over Schroeder's protests that she had not yet signed the contract. (Id.).

Because Schroeder believed that Selby had taken Niko without signing the contract, she disputes the oral agreement's terms. (See id.). Schroeder maintains that Selby has failed to rightfully return Niko or her foal. (Id. ¶ 51). According to Schroeder, Selby will only divulge that Niko's foal is "alive." (Id.). Accordingly, Schroeder brings three counterclaims against Selby: (1) breach of contract; (2) conversion of Niko; and (3) conversion of Niko's foal. (Doc. No. 97 at 7–9). Selby has now moved to dismiss Schroeder's counterclaims. (Doc. No. 106).

---

[3] The relevant background and facts necessary to resolve the pending motion to dismiss are drawn from the Counterclaim (Doc. No. 97) and are accepted as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

## II.     LEGAL STANDARD

The legal standard for motions to dismiss counterclaims follows the same standard as other motions to dismiss under Rule 12(b)(6). See Sony/ATV Music Publ. LLC v. D.J. Miller Music Distribs., No. 3:09-cv-01098, 2011 U.S. Dist. LEXIS 116158, at *9 (M.D. Tenn. Oct. 7, 2011). To survive a motion to dismiss under Rule 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). But "[w]hile the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## III.    ANALYSIS

### A.     Choice of Law Principles

As the Court discussed at length in its opinion denying Schroeder's Motion to Dismiss Selby's initial claims, because "jurisdiction over this case [is] based solely on diversity of citizenship between the parties, [the Court] must first decide what state's laws to apply to each claim." (Doc. No. 90 at 5). The Court must similarly determine what law applies to Schroeder's

4

counterclaims. See Columbia Cas. Co. v. Century Sur. Co., 203 F. Supp. 3d 863, 868 (M.D. Tenn. 2016). "A federal court exercising its diversity jurisdiction must apply the choice-of-law rules of the state in which it is located." Yang Ming Marine Transport Corp. v. Intermodal Cartage Co., Inc., 685 F. Supp. 2d 771, 779 (W.D. Tenn. 2010). The Court has already determined that Tennessee choice of law rules apply. (Doc. No. 90 at 5–6).

But which state law applies according to Tennessee choice of law rules depends on the context of each of Schroeder's three counterclaims, especially because Selby resides in Pennsylvania, Schroeder resides in Tennessee, and the parties' claims deal with activity occurring in either Kentucky or Pennsylvania. See Restatement (Second) of Conflict of Laws § 173 cmt. a (Am. L. Inst. 1971) (noting a "growing realization that all issues in tort need not be governed by the same law"). The Court will thus examine each counterclaim in turn, first determining what choice of law a Tennessee court would apply and, second, analyzing that claim under the applicable jurisdiction's law.

### B. Breach of Contract

#### 1. Choice of Law

The Court need not undertake a fulsome choice of law analysis for Schroeder's breach of contract counterclaim because it has already found that Pennsylvania choice of law rules apply to the contract at issue. (See Doc. No. 90 at 7–8). Moreover, both Selby and Schroeder concede that Pennsylvania law applies. (See Doc. No. 106 at 12; see also Doc. No. 115 at 2).

#### 2. Merits

Schroeder argues that Selby breached the parties' verbal agreement by: (1) withholding Niko's foal; and (2) failing to abide by terms for breeding and ownership of subsequent foals. (Doc. No. 97 ¶¶ 52–57). Under Pennsylvania law, "three elements are necessary to plead a cause

5

Case 2:20-cv-00016   Document 150   Filed 10/18/21   Page 5 of 12 PageID #: 1335

of action for breach of contract: (1) the existence of [an oral, written, or implied] contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).

Selby challenges the first two prongs, arguing that Schroeder's breach of contract claim consists entirely of insufficient legal conclusions and that the agreement's breeding terms are unenforceable. (Doc. No. 106 at 12, 15). Specifically, Selby appears to argue that the terms of the bargain that allowed her to take possession of Niko in the first place are too uncertain. (Id.). But the Court already recognized the existence of this exact bargain in favor of Selby when denying Schroeder's Motion to Dismiss. (Doc. No. 90 at 8–10). For the reasons stated in that opinion, the Court declines to find differently when the shoe is on the other foot. (Id.).

Nonetheless, Schroeder's allegations, when viewed in the light most favorable to her, sufficiently allege a breach of contract claim under Pennsylvania law. First, Schroeder alleges specific factual allegations that she and Selby entered into an agreement whereby: (1) Schroeder would inseminate Niko and provide her to Selby; and (2) Schroeder would retain breeding rights and own Niko's first foal. (Doc. No. 97 ¶ 49).

Schroeder also sufficiently alleges Selby breached the contract by "withholding Niko's foal from [her]" and "by refusing to cooperate with [her] regarding subsequent foals from Niko." (See id. ¶¶ 53–54; see also Doc. No. 115 at 3–4). Finally, Schroeder alleges that she has suffered damages "including but not limited to being denied co-ownership of Niko's subsequent foals, which per the agreement were to be sold and the proceeds split between the parties." (Id. ¶ 56). These allegations are sufficient to plead a breach of contract counterclaim against Selby.

6

Accordingly, Selby's motion to dismiss Schroeder's breach of contract counterclaim will be denied.

### C. Conversion of Niko

#### 1. Choice of Law

The Court agrees with the parties that Kentucky law applies to Schroeder's counterclaim for the conversion of Niko. (See Doc. Nos. 107 at 7, 115 at 8). For tort claims such as conversion, Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. See Insituform Techs., Inc. v. Per Aarsleff A/S, 534 F. Supp. 2d 808, 811 (W.D. Tenn. 2008) (citing Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992)). Under this approach, "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway, 830 S.W.2d at 59 (citing Restatement (Second) of Conflict of Laws §§ 6, 145, 146, and 175). In other words, "the rights and liabilities of the parties to an action in tort are determined by the local law of the state that has the most significant relationship to the incident and the parties involved." Chase Manhattan Bank v. Cve, Inc., 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002).

Four contacts aid Tennessee courts in determining the most significant relationship: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." Montgomery v. Wyeth, 580 F.3d 455, 459–60 (6th Cir. 2009) (citing Hataway, 830 S.W.2d at 59); see also Restatement (Second) of Conflict of Laws § 145(2) (same). "These [four] contacts are to be evaluated according to their relative importance with respect to the particular issue." See Restatement (Second) of Conflict of Laws § 145.

Here, Kentucky has the most significant relationship to the conversion claim. Both the first and second contacts weigh in favor of Kentucky law because the injury and conduct causing the injury occurred in Kentucky when Selby allegedly took Niko from Schroeder's veterinarian's office. (Doc. No. 97 ¶¶ 58–63). Indeed, "the parties verbally agreed that they would meet at the office of Ms. Schroeder's veterinarian in Bowling Green, Kentucky, where Ms. Selby would take possession of Niko and transport Niko back to her farm in Pennsylvania." (Id. ¶ 50). The third contact, domicile of the parties, is neutral because Selby resided in Pennsylvania while Schroeder resided in Tennessee. And regarding the fourth factor, because each party resides outside of Kentucky, the Court can reasonably determine that the parties' contractual relationship, at least with respect to the transfer of Niko, is centered in Kentucky, the place where Niko was initially housed. (See id. ¶ 59). Accordingly, the Court finds that Kentucky law applies to Schroeder's claim for conversion of Niko. See Insituform Techs., Inc., 534 F. Supp. 2d at 811 (citing Hataway, 830 S.W.2d at 59); see also Eastman v. Pope, No. 3:09-cv-0825, 2011 WL 1323021, at *2 (M.D. Tenn. Apr. 5, 2011).

　　2. Merits

Schroeder argues that Selby wrongfully took Niko while the horse was still under Schroeder's control. (Doc. No. 97 ¶¶ 58–65). Under Kentucky law, "[c]onversion is an intentional tort that involves 'the wrongful exercise of dominion and control over the property of another.'" Boling v. Prospect Funding Holdings, LLC, 324 F. Supp. 3d 887, 898 (W.D. Ky. 2018) (citing Jasper v. Blair, 492 S.W.3d 579, 582 (Ky. App. 2016)). "The elements of conversion remain unsettled under Kentucky law," Savidge v. Pharm-Save, Inc., No. 3:17-CV-186-CHB, 2020 WL 265206, at *4 (W.D. Ky. Jan. 17, 2020); however, modern courts employ a seven-factor test. See Grayiel v. AIO Holdings, 452 F. Supp. 3d 600, 639–40 (W.D. Ky. 2020); see also Int'l Bhd. of

Teamsters Local 651 v. Philbeck, 464 F. Supp. 3d 864, 872 (E.D. Ky. 2020); C&H Mfg., LLC v. Harlan Cty. Indus. Dev. Auth., Inc., 600 S.W.3d 740, 745 (Ky. Ct. App. 2020).

Under this seven-factor test, Kentucky courts examine whether: "(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied plaintiff's right to use and enjoy the property and which was to defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property." Novolex Holdings v. Wurzburger, No. 19-145-DLB-CJS, 2020 WL 4758360, at *8 n.10 (E.D. Ky. Aug. 17, 2020) (internal citations omitted); see also Savidge, 2020 WL 265206, at *4 (citing Outfront Media, LLC v. LeMaster, 399 F. Supp. 3d 671, 681 (E.D. Ky. 2019)).

Here, Schroeder, the counterclaim plaintiff, adequately pleads each element. First, she alleges that "[a]t all times relevant to the litigation, [she] has held legal title to Niko." (Doc. No. 97 ¶ 58). Second, she alleges that she possessed Niko at the time Selby allegedly took her. (Id. ¶ 59). Third and fourth, Schroeder alleges "Selby intentionally and wrongfully took Niko in a manner which denied [her] the rights to have and enjoy Niko," and which was for Selby's "own use and benefit." (Id. ¶¶ 60–61). Fifth, Schroeder alleges that she "objected to [] Selby's wrongful taking of Niko, but her objection was ignored." (Id. ¶ 62). Sixth, she alleges that Selby's taking of Niko constituted the legal cause of her loss of property. (Id. ¶ 63). And seventh, Schroeder alleges that because of Selby's conversion, she "suffered damages" in excess of $75,000, including the loss of enjoyment of Niko and the loss of breeding proceeds. (Id. ¶¶ 49, 56, 64–65). In sum,

9

Schroeder's allegations, when viewed in the light most favorable to her, sufficiently allege a conversion claim under Kentucky law.[4] Accordingly, Selby's motion to dismiss Schroeder's counterclaim for conversion of Niko will be denied.

    D.  Conversion of Niko's Foal

        1.  Choice of Law

Tennessee's "most significant relationship" approach similarly applies to Schroeder's counterclaim for conversion of Niko's foal. See Insituform Techs., Inc., 534 F. Supp. 2d at 811 (citing Hataway, 830 S.W.2d at 59). As discussed in Section III.C.1, *supra*, Tennessee courts examine four relevant contacts: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." Montgomery, 580 F.3d at 459–60 (citing Hataway, 830 S.W.2d at 59). Selby argues that the contacts favor Pennsylvania law because the injury—conversion of Niko's foal—occurred in Pennsylvania. (Doc. No. 106 at 7–8). Conversely, Schroeder argues Kentucky law applies because the conversion itself occurred in Kentucky. (Doc. No. 115 at 13).

Although this is a closer call than Schroeder's counterclaim for conversion of Niko, the Court concludes that Kentucky law similarly applies. The first contact of Tennessee's "most significant relationship" test admittedly favors Pennsylvania because that is where the foal was born. (See Doc. No. 106 at 7). However, the second and fourth contacts favor Kentucky law. The

---

[4] Schroeder's allegations also pass muster under the less frequently used three-element test for conversion under Kentucky law, as these elements are included in the seven-factor test. See Coleman v. JP Morgan Chase Bank, N.A., No. 3:17-CV-00741-GNS-CHL, 2018 WL 6183285, at *6 (W.D. Ky. Nov. 27, 2018) (applying Kentucky law) (internal citations omitted); see also Novolex, 2020 WL 4758360, at *8 n.10 (internal citations omitted); Savidge, 2020 WL 265206, at *4.

conduct causing the injury occurred in Kentucky when Selby allegedly took Niko, who was by then pregnant with the foal. (Doc. No. 97 ¶¶ 51, 67); see also Charash v. Oberlin College, 14 F.3d 291, 297 (6th Cir. 1994) (noting that, for a choice of law analysis, conversion is "complete when the defendant takes, detains, or disposes of the chattel"). And, as the Court already determined, the place where the parties' relationship was centered, if anywhere, was Kentucky. The domicile contact, as with Schroeder's claim for conversion of Niko, is neutral at best since the parties each live outside of Kentucky. In sum, the contacts weigh in favor of Kentucky law. See Montgomery, 580 F.3d at 459–60 (citing Hataway, 830 S.W.2d at 59).

2. Merits

Schroeder once again satisfies Kentucky's seven-factor test in alleging that Selby wrongfully took Niko's foal. (Doc. No. 97 ¶¶ 66–73). Meanwhile, Selby argues that Schroeder fails to satisfy the fifth and seventh elements of conversion under Kentucky law. (Doc. No. 106 at 20). Specifically, Selby argues that Schroeder failed to "plead any allegation that she demanded the return of Niko's first foal; that [she] refused said request; that [she] transferred Niko's first foal to another; or that Niko's first foal was destroyed or seriously damaged." (Id.). But the Court rejects these arguments.

First, Schroeder alleges that "[a]t all times relevant to the litigation, [she] has held legal title to Niko," who was pregnant with a foal. (Doc. No. 97 ¶¶ 66, 67). She also alleges she paid for Niko's insemination costs. (Id. ¶ 67). Second, Schroeder alleges that she possessed Niko and her gestating foal at the time Selby allegedly took her. (Id.). Third and fourth, Schroeder alleges "[s]ince the birth of Niko's foal . . ., [ ] Selby has intentionally and wrongfully kept the Foal in a manner which denies [her] rights to have and enjoy the Foal," and which was for Selby's "own use and benefit." (Id. ¶¶ 68–69). Fifth, Schroeder alleges that she "objected to [] Selby's wrongful

11

keeping of the Foal, but her objections have been ignored." (Id. ¶ 70). Moreover, Schroeder objected to Selby's taking of Niko, who was by then pregnant with the foal. (Id. ¶ 62). It would be counterintuitive to find that Schroeder's objection to Selby's taking of a pregnant Niko does not also imply an objection to the taking of the foal itself. See Charash, 14 F.3d at 297. Sixth, Schroeder alleges that Selby's taking of Niko while pregnant constituted the legal cause of her loss of property. (Id. ¶ 71). And seventh, Schroeder alleges that because of Selby's conversion of the Foal, she "suffered damages" in excess of $75,000, including the loss of the foal. (Id. ¶¶ 72–73). In sum, Schroeder's allegations, when viewed in the light most favorable to her, sufficiently allege a claim for conversion of Niko's foal under Kentucky law.[5] Accordingly, Selby's motion to dismiss Schroeder's counterclaim for conversion of Niko's foal will be denied.

## IV. CONCLUSION

For the foregoing reasons, Selby's Motion to Dismiss Schroeder's Counter-Complaint (Doc. No. 106) will be denied in full.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Even were Pennsylvania law to apply, Schroeder's allegations would still be sufficient. See Hickey v. Univ. of Pittsburgh, No. 2:20-cv-690, __ F. Supp. __, 2021 WL 1630579, at *6 (W.D. Pa. Apr. 27, 2021). "To prove a claim for conversion under Pennsylvania law, a [party] must show: (1) the deprivation of their right of property in, or use or possession of, a chattel, or other interference therewith; (2) without their consent; and (3) without lawful justification." Gabriel v. Giant Eagle, Inc., 124 F. Supp. 3d 550, 573 (W.D. Pa. 2015). Schroeder's allegations, viewed in the light most favorable to her, adequately plead a claim for conversion of Niko's foal under Pennsylvania law. (See Doc. No. 97 ¶¶ 66–73).