UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| BECKY A. SELBY, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:20-cv-00016 |
| HOLLY T. SCHROEDER, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

They say you should never look a gift horse in the mouth. But for the third time, the parties have asked the Court to do just that and address claims arising out of a contract dispute over a blind horse named Niko. Three claims by Becky A. Selby – breach of contract, fraud, and defamation – survived the motion to dismiss stage. (Doc. No. 90). There was no motion for summary judgment as to those claims; instead, Holly T. Schroeder counterclaimed for breach of contract, conversion of Niko, and conversion of Niko's newborn foal. (Doc. No. 97). Pending now before the Court is Selby's fully briefed Motion for Summary Judgment to dismiss Schroeder's counterclaims. (Doc. Nos. 116, 117, 118, 127, 128, 129, 130, 135, 136). The motion will be denied.

Again, the Court relies on the disputed and undisputed material derived from the summary judgment record.[1] Niko Blu Girl ("Niko") is a blind blue roan mare descended from an esteemed lineage. (Doc. No. 136 ¶ 7). Schroeder, a professional, award-winning horse breeder, owned Niko but determined that her farm was not equipped to care for a blind horse. (Id. ¶¶ 11–12). After

---

[1] The Court draws the undisputed facts from the parties' Summary Judgment briefings (Doc. Nos. 116, 128, 135) along with the parties' various responses to the Statements of Facts filed contemporaneously with those briefings (Doc. Nos. 118, 129, 130, 136). The Court also notes the many disputed facts where appropriate.

consulting with her veterinarian, she decided to offer Niko for sale on social media. (See Doc. No. 129-2 ¶¶ 9–10; see also Doc. No. 136 ¶ 18). After posting Niko's availability, Selby responded to express her interest in acquiring the horse. (Doc. No. 136 ¶ 13; see also Doc. No. 129 ¶ 14).

After some negotiation, Schroeder and Selby entered into an oral contract for the transfer of Niko on October 3, 2017. (Doc. No. 136. ¶ 15). The parties dispute the exact terms of the agreement, which perforce requires denial of the pending motions, including whether Schroeder was to retain registration and legal ownership of Niko; whether Schroeder was to retain breeding rights in perpetuity; and whether the parties were to sign a written agreement on the date Selby was to pick up Niko. (Id. ¶¶ 16, 26, 31, 45; see also Doc. No. 129 ¶ 2). The parties do not dispute, however, that under the deal, Selby would possess Niko and care for her, subject to certain conditions. (Doc. No. 136 ¶ 15; see also Doc. No. 129 ¶¶ 26, 41). Nor do the parties dispute that under the deal, Niko's first foal would belong to Schroeder. (Doc. No. 129-3, Selby Dep. at 39:22-40:1). This is confirmed by Schroeder, who messaged that she was looking forward to becoming "co-mommies" with Selby, and that she was glad that they found a way for Niko to "keep breeding." (Doc. No. 136 ¶ 24; see also Doc. No. 129-1 ¶ 25). Schroeder also posted on Facebook that Niko would be "moving to Pennsylvania in a few weeks, to live a VERY long and love filled life with my friend, Becky Selby!!!! Becky has experience with blind horses and is well equipped to provide the best, loving home I so wanted for my dear Niko!!!!" (Doc. No. 129 ¶ 15).

As agreed, Selby drove from Pennsylvania to Kentucky, where Schroeder's veterinarian housed Niko. However, Selby arrived earlier than expected and did not wait for Schroeder sign a written agreement. (Doc. No. 136 ¶ 40). When Selby asked the veterinarian to turn Niko over to her, he informed her that she should wait for Schroeder to arrive. (Id. ¶ 41). The parties dispute whether Selby then falsely told the veterinarian that Schroeder would allow her to take Niko early

2

because she had a long drive back to Pennsylvania. (Id. ¶ 42). Eventually, the veterinarian acquiesced, and Selby took Niko before Schroeder's arrival. (Id. ¶ 43). When Schroeder finally arrived, Selby informed her that she had already come and gone. (Id. ¶ 50). Schroeder then called Selby and asked that she return to sign the agreement, or, alternatively, that she provide her address so she could mail the agreement. (Id. ¶ 58; see also Doc. No. 129 ¶ 60). Selby refused, telling Schroeder, "[t]hat's ok Holly, we are friends, we trust you." (Doc. No. 136 ¶ 59). Selby does not dispute that Schroeder then thought, "[Selby], you have my horse, do I trust you?" (Id. ¶ 60). Relying upon their friendship and her possession of the registration, Schroeder did not else. (Id.; see also id. ¶¶ 62, 63).

For the next ten months, the parties spoke frequently without Selby referencing contract terms or requesting registration papers. (Id. ¶ 64). Then, on September 20, 2018, Selby messaged Schroeder to confirm her understanding of the deal, (id. ¶ 70), which Schroeder disputes. (Id.). Unsure what to do next, Schroeder phoned the Warren County, Kentucky Sheriff's Office to inquire whether she had rights and whether Selby may have committed a crime. (Id. ¶ 76; see also Doc. No. 129 ¶¶ 71–73). The parties dispute the subject of that call and the resulting report issued by the Sheriff's Office. (Doc. No. 136 ¶¶ 77–82). To date, Selby has Niko's foal. (Id. ¶¶ 84, 85). This case reflects the ongoing disagreement.

Notwithstanding the exhaustive briefing on Selby's motion, (Doc. Nos. 116, 117, 118, 127, 128, 129, 130, 135, 136), the Court need not spill significant ink in resolving it. This is a result of the governing rule itself: the Court shall grant summary judgment only where (1) the movant has shown "that there is no genuine dispute as to any material fact," and (2) "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although Rule 56(a) requires the Court to "state on the record the reasons for granting or denying the motion," both "the form and detail of

3

the statement of reasons are left to the [C]ourt's discretion." See 2010 Adv. Comm. Notes. Consequently, district courts are not required "to write elaborate essays using talismanic phrase," Jackson v. Fed. Exp., 766 F.3d 189, 197 (2d Cir. 2014), especially when they are denying summary judgment. See Capitani v. World of Miniature Bears, Inc., No. 3:19-cv-00120, 2020 WL 4805729, at *1 (M.D. Tenn. Aug. 18, 2020); see also United States v. Massachusetts, 781 F. Supp. 2d 1, 19–20 (D. Mass. 2011). This is, in part, because district courts exist to try cases, not to write elaborately and exhaustively when it is not necessary. See Massachusetts, 781 F. Supp. 2d, 19, 24. What is required, however, "is a record sufficient to allow an informed appellate review, see id. at 19–20, and in most cases "a district court's determination that there exists a triable issue of fact cannot be appealed on an interlocutory basis." Gregory v. City of Louisville, 444 F.3d 725, 742 (6th Cir. 2006). The Court now turns to why Selby's motion will be denied and why a trial is necessary to resolve the dispute.

Summary judgment on Schroeder's counterclaim for breach of contract will be denied because there are several material factual disputes about whether the contract between the parties contemplated Niko's foal or subsequent breeding rights.[2] When addressing legal questions of summary judgment "in the context of a contract dispute," the movant "must be able to prove with certainty what the pertinent terms of that contract were before [he] can obtain judgment as a matter of law." Farkas v. Rich Coast Corp., No. 1:14-CV-272, 2017 U.S. Dist. LEXIS 79767, at *20 (M.D. Pa. May 23, 2017). Moreover, "[t]he existence and terms of an oral contract must be established by clear and precise evidence," Redick v. Kraft, Inc., 745 F. Supp. 296, 300 (E.D. Pa.

---

[2]  The Court already determined that Pennsylvania law applies to the breach of contract counterclaim. (Doc. No. 150 at 5; see also Doc. Nos. 106 at 12, 115 at 2).

1990), and "whether a contract exists is [often] a factual issue for the trier of fact to determine. . . . York Excavating Co., Inc. v. Employers Ins. Of Wausau, 834 F. Supp. 733, 740 (M.D. Pa. 1993).

This case exemplifies "the paradigm of a factual dispute concerning the terms of an alleged oral contract," where "all the parties seem to insist that some sort of agreement existed, [but] their conduct. . . manifested some nascent, fragile and fleeting understanding between the parties." Farkas, 2017 U.S. Dist. LEXIS 79767, at *20–21. There are factual disputes about the terms of the oral agreement. The specific disputes include whether Schroeder was to retain registration and legal ownership of Niko; whether Schroeder was to retain breeding rights in perpetuity; and whether Selby or Schroeder was entitled to possession and ownership of Niko's foal. (Doc. No. 129 ¶¶ 16, 26, 31, 33, 45; see also Doc. Nos. 129 ¶ 2, 136 ¶ 16). As a result, the Court simply "cannot find that the terms of this agreement can be ascertained with sufficient certainty to permit the entry of summary judgment" in favor of Selby. Id. at *21. Accordingly, summary judgment on Schroeder's counterclaim for breach of contract will be denied.

For similar reasons, summary judgment on each of Schroeder's conversion claims will be denied.[3] As already discussed, not only do the parties dispute who was to retain legal ownership of Niko, (Doc. No. 129 ¶¶ 29), the parties also dispute who would retain ownership over Niko's foal. (Id. ¶¶ 69–70; see also Doc. No. 136 ¶¶ 33-34). These disputes are sufficient to defeat summary judgment. See EnTech, Ltd. v. Speece, 841 F. App'x 944, 956 (6th Cir. 2021) (denying summary judgment on conversion claim where "there is a genuine dispute of fact as to" which party exercised "dominion or control" over the property at issue); see also Bagsby v. Gehres, 225 F. App'x 337, 348 (6th Cir. 2007).

---

[3] The Court already determined that Kentucky law applies to each of the two conversion counterclaims. (See Doc. No. 150 at 7–8, 10–11).

5

For the foregoing reasons, Selby's Motion for Summary Judgment to dismiss Schroeder's counterclaims (Doc. No. 116) is **DENIED**. This case will proceed to trial. The parties are reminded that they **SHALL** file a joint status report with the Court regarding the outcome of their mediation efforts no later than **two (2) days** after the mediation. (See Doc. No. 137; see also L.R. 16.05(b)).

The Court rules as follows on the other pending motions:

1. Schroeder's Motion for Hearing (Doc. No. 127) is **DENIED AS MOOT**; and

2. Schroeder's Motion for Leave to File Second Amended Answer and Counter-Complaint (Doc. No. 154) is **GRANTED** due to the quickly impending February 22, 2022 trial date and because the amendments pertain only to affirmative defenses and relief sought, which can each be resolved at trial.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE